All right, we'll call our last case for argument this morning, 24-3159 McCray v. Collins. It looks like we have our counsel ready. Ms. Randles, got your name correct? Yes, Your Honor. All right, you may proceed when you're ready, please. Thank you, Your Honor. May it please the court. My name is Rebecca Randles, and I represent Deshaun McCray in this matter. This is an employment discrimination case arising at the VA. Ms. McCray brought four causes of action, discrimination, harassment, retaliation, and constructive discharge. The court granted summary judgment on all four claims, and for that action, the court erred. There was a companion case, the Dial v. VA case, that was successfully litigated and involved the very same facts and the very same circumstances, save one. And that was that Ms. Dial actually quit the VA because of the discrimination, while Ms. McCray took an unfavorable transfer to get out from under her Caucasian supervisor, Ruth Duda. Importantly, Ms. Dial and Ms. Duda were so overworked by the end of their tenures at the VA, they were replaced by four people. The court, in its 64-page decision, limited plaintiff's complaints, then, one at a time, knocked them out. The court became essentially an advocate for defense counsel, and honestly, defense counsel is quite good. They didn't need the court's advocacy in this matter. The plaintiff did establish that she had been treated less favorably than Caucasian employees in her supervisory chain. Are you talking about the summary judgment? Yes. Okay. What specific evidence did she present that there was a different treatment of the black nurses than the white nurses? She presented a lot of evidence. She presented it on three specific levels. First, she presented evidence of her own treatment. Secondly, she presented evidence of treatment of others in her same supervisory chain. And third, she showed evidence of individuals who weren't below her who were also black and whom the… Did she present any evidence that there were white nurses that were treated better? Yes, she did. She showed that… Tell me what that evidence is and tell me exactly the page in the record that I will find that. Well, I would have to pull out the record. I'm not sure I can… All right. Well, tell me, is it in her deposition, McCrae's deposition? It is in her deposition. I thought she said in her deposition that Ms. Duda treated the Caucasian nurses. She disciplined the Caucasian nurses too. Didn't she say that? No. What she said was that since she was a supervisor, McCrae was a supervisor, Duda would countermand any of the discipline that she would tell McCrae to meet up to the Caucasian nurses, but she allowed that discipline for the exact same thing, no matter what it was, to go forward with the black nurses. So she was currying favor with the white nurses by saying, oh, Duda, I mean, McCrae is being far too difficult on you. And you say that's in her deposition? It is in her deposition. All right. And you can't tell me what page is in the appendix or in the deposition where I will find that. I'm not sitting here at this moment. Did you put that in your brief, the record citations, where I can find that? We did put it in the brief for the record citations. We also put it in the summary judgment. All right. So you cited to her deposition and I can go to those pages that you cite in your brief and see that she treated Caucasian nurses better than she treated Ms. McCrae. Yes, you will find that specifically in three ways. You will find it with regard to discipline and the disciplinary actions that were meted out to the supervising the nurses that McCrae was the supervisor over. You will also find it in the workload disparity between the blacks and the Caucasians. Ms. McCrae and Ms. Dial testified with regard to the work disparity between them. But with regard to supervisors, there were only two supervisors and both of them were black. And so there is no information concerning similarly situated employees because the only supervisors at that point in time were people of color. But doesn't your claim require that you show that there is different treatment afforded to people who are similarly situated? And you tell me there was nobody similarly situated to the two black supervisory nurses. Well, just because you're you're a single individual working in an employment setting doesn't mean that they can then discriminate against you at will. The case law discrimination, by definition, means that you treat one person differently than you treat another one who is similarly situated. So what I'm looking for is a similarly situated non-black person who is not treated in the same way as Ms. McCrae was. Well, with regard to supervisors, there were only two supervisors and both of them were black. And so there will not be a similarly situated supervisor in this area. However, when you look at the manner in which all of the black nurses were treated, what you find is that all of the black nurses were treated very differently than the white nurses. And under Kansas, under the 10th Circuit law, you don't have to have similarly situated individuals where the disparity is fairly clear. Ms. Randolph, can I go back? I'm sorry, Judge Murphy. You mentioned a bunch of emails. Are those emails in the record? Yes. The emails between Ruth Cummings and the plaintiffs. No, no, no. I thought you referenced some other emails that indicated actual discriminatory conduct. Are those in the record? No. The emails that are referenced in the brief concern the emails between the plaintiffs and Dr. Cummings, who was the second. Cummings. Okay. All right. Those are the only emails. Okay. I'm sorry, Judge Federico. Oh, you're good. Ms. Randolph, I wanted to ask to go back to your first sentence. You said that Ms. McRae raised four claims that were all dismissed at summary judgment. However, my reading of the record is that counts or claims two and four were actually dismissed at the pleading stage. One of them for failure to allege an element and the other for failure to exhaust. In your opening brief, did you adequately argue against the district court's reasoning for those dismissals such that we can consider that preserved before us on appeal? With regard to the dismissal for failure to exhaust, yes, that is adequately briefed in this briefing before the court of appeals. With regard to constructive discharge, she wasn't technically discharged. And so probably the court got that piece right, that she wasn't discharged. Instead, she had a transfer to Colorado that was disadvantageous, which is the damage that results from the retaliation and the harassment and the discrimination that she experienced. And so I believe that all of the claims were completely exhausted. But with regard to constructive discharge, because she wasn't technically discharged and she didn't quit the agency, we have not proceeded further with that particular claim. Under constructive discharge? Under constructive discharge. You say there's no appeal of constructive discharge. Correct. We haven't provided any information concerning that claim. All right. Our biggest concern with regard to this case is the manner in which the court has limited, limited, limited the claims and then knocked them out. The court did this by, first, acting as the trier of fact, accepting the defendant's statements of fact is true. Second, he limited plaintiff's claims to only discrete acts, even though the complaint, the informal complaint, the formal complaint, and the petition in front of this court all established that the acts were ongoing in nature. Counsel. Yes. If I understand your argument correctly, it's or where you might be going is as to the district court's treatment of the continuing violation doctrine here. Is that right? That's part of it. But the court also. Well, let me let me ask you about that. Do you agree that that does not apply when we're talking about your discrimination and retaliation claims? Right. I would agree that the 10th Circuit case law at this point in time says that continuing violation is not a theory that can be followed in the 10th Circuit. OK, so so help me understand your argument about how the district court you claim aired in its. Treatment of the discrete acts here as part of its analysis of your discrimination and retaliation claims. Well, what the court did was it limited every claim to eight acts that were set forth in the acknowledgement letter sent by the agency EEO officer. That's not proper. The. It's not proper on two bases. First, because anything that's like or related to those claims should also be part of the invest should also be part of the case pursuant to the law of the state. The second reason is not correct is because she did allege ongoing harassment and ongoing retaliatory harassment in both her her informal complaint, her formal complaint and in the complaint before the court. So knocking out all of the information in there that says these acts continued from 2018 until the present indicates that there's a continuing issue that's going on. Each of the then if he wants to just deal with discrete acts, you have to look at all of the discrete acts that were administratively exhausted, not just the discrete acts that were specifically listed in the form in the acknowledgement letter from the EEOC before the formal complaint is even investigated. Everything that comes out has to come out of the investigation, not just out of what the law say. Otherwise, I mean, isn't our law pretty clear that we're, we're limited to the charge itself, the EEOC charge itself. No, the law of the state that the law of the circuit is that and it's Smith versus Cheyenne retirement investors. The law is that a claim is limited by the scope of the administrative investigation that can read and the language is this, that can reasonably be expected to follow the charge of discrimination. In this case, the charge of discrimination said that between 2018 and the present, I have been discriminated against in the following ways. I have had my authority usurped. I have had my workload increased. I have had and then she went through a series of those. Then there were specific examples given in the formal complaint. There were eight specific examples, identifying how each of those things had occurred, but that's not the whole of it. It's each of the times that she was usurped each of the time that her authority was undermined each of the times that there was a workload disparity or that her workload was increased. All of those things are part of this complaint. You cannot limit it to merely the eight things that were on the table that the agency picked out of her informal interview and out of her formal complaint. It has to be limited only by the scope of the administrative investigation. Now the court overly relied or they over extrapolated from the Smith case. In this case, all of the claims that plaintiff talks about in her summary judgment motion in the petition and in her appellate brief were fully investigated. Not just that they were talked about during the course of this case, but they were investigated. And once they're investigated, then administrative exhaustion occurs. The court held that administrative exhaustion can't occur under Smith because it's limited solely to what's in the complaint. That isn't accurate. What the Smith case said was the information that is produced by the defendant cannot be used to expand the plaintiff's complaint. We don't have that situation here. In the administrative complaint itself, the plaintiff established, Ms. McRae said, these acts have been continuing from 2018 to the present in one of the situations. In the other one, she said, from 2019 to the present. And so those are by nature acts that occurred over and over and over again. And to the extent any of those acts were investigated, those acts are part of this charge and part of this case. And they were administratively exhausted. The next thing that the court did, not only did it accept as true everything that the defendant alleged, even where plaintiff had specifically controverted those, the court accepted as true the defendant's allegations. That's improper. The court is to act solely, not as a super jury, but is to act solely to determine whether or not there's sufficient information in the complaint to allow the case to go forward to a jury. That didn't happen in this case. Instead, the court acted as a super jury, taking as true what the defendant had produced. And there were situations such as what was said to Dr. Cummings, where there's only three people in the room. Two of them testified that they told Dr. Cummings about discrimination, and the court accepted that he was never told that discrimination had occurred when we have the testimony and we have the emails. You're out of time. Thank you. Thank you, counsel. Mr. Vannersby. Thank you. Can you hear me okay? We sure can. Yes. May it please the court, Brian Vannersby on behalf of the appellee, Secretary Collins. The question in this case is not about whether Ms. McCray has friction with her supervisor. She clearly did, but Title VII protects against unlawful discrimination in personnel actions, not supervisory friction or workplace dissatisfaction. The district court applied the correct summary judgment standard. They credited Ms. McCray's facts where they were supported by the record, drew reasonable and not unreasonable inferences in her favor, and still concluded that the government was entitled to judgment as a matter of law. That's because no reasonable jury on the facts that were presented to the district court as summary judgment could have found in Ms. McCray's favor. There are many reasons why the district court's judgment should be affirmed, but I'd like to focus my presentation on three of those reasons subject to the court's questions. First. Well, since you gave us an opening for questions, Ms. Randall says that there is deposition testimony that white nurses were treated differently and better than black nurses. Was there specific testimony in the deposition to that effect? No, your honor, that would not be accurate. In fact, I did look through the record. I did locate in Ms. McCray's deposition where she specifically testified that Ms. Duda did recommend disciplinary action for Caucasian employees. There was nothing in the record to suggest that the discipline was then retracted or she was only made to suggest that McCray was coming down hard on the Caucasian nurses. And in fact, there's also deposition testimony specifically from Ms. McCray that Ms. Duda targeted Caucasian employees personally with hostile work environments. I believe one of the situations was Ms. Duda allegedly went to a Caucasian employee under her command. And public and told her that she wasn't smart enough and that she should probably look for a new job. That's not great, but that's not discrimination. And in fact, that directly undercuts Ms. McCray's claim or allegation that there was racial animus on the part of Ms. Duda. But what is your understanding of the best evidence in support of on the on the discrimination claim that supports an inference here? What would be the best evidence in your view? It's kind of an unfair question, but I'm trying to focus us on what what the record actually shows. The best evidence, your honor, I think would be. Ms. McCray's allegation that Ms. Duda. A year after she left her employment, made a statement to another African-American employee that, quote, she she liked her headscarf. That she never understood why Tanisha Burks, who is another African-American employee, referred to as an ancient Miamis car. And but I still bet. That being the best evidence is not great for Ms. McCray, because I know what the case law says in the 10th Circuit is that statements by another employee that have a racial undertone don't reflect racial animus by the decision maker in this case. And in fact, especially on the facts here where Ms. Duda says, I didn't understand that term to be a racial have racial connotations. And in fact, I was in the middle of trying to provide this. Employee with a compliment. It doesn't reflect any racial animus. And that is one of the points I want to talk about the court where we're in the appendix of the record. Do we find that the. And Jemima reference. Do you know, just give me a moment. I can pull it up, but it is in the appendix. It is in this. I have it in the supplemental appendix. It is starting at page 1652. It's volume seven of the supplemental appendix, and you'll see it. Whose deposition is that? Not from a deposition, Your Honor. It's a compendium of documents that Ms. McCray attached to her summary judgment response. Your Honor, there's only one. Well, there was two depositions taken in this case. One being Ms. McCray, the second being the facility director at the time that the. Deposition of the facility director was not used in summary judgment, so it's not in the record. So the only deposition that the court has to look at is Ms. McCray's deposition. There's no doubt in this. There's other depositions from Ms. dials case that were attached to. Mr. Cummings, Dr. Cummings, is his deposition in the record? Dr. Cummings' deposition was taken in Ms. Dial's case. It wasn't taken in this case. So there wouldn't be any information specifically as to Ms. McCray necessarily in her claims. But it's not in this appendix. It is in this appendix. It was taken in another case, but used in summary judgment in this case. I understand. Thank you. Just to get back to some of the points I want to talk about, because there is a very, I think, important point for this court to consider, which is what is the appropriate standard for a federal employee to prove a claim for discrimination under Title VII. As we know, Ms. McCray is a federal employee. And under the federal sector provisions of Title VII, a federal employee must show that she suffered a personnel action in order to be successful. And non-controverted facts do not support that there is a personnel action in this case. Title VII of the federal sector provision of Title VII provides that all personnel actions shall be free from discrimination based on race. And the Supreme Court recently recognized that that term has a very specific and, quote, easy-to-understand meaning under the Civil Service Reform Act, that's Section 5 U.S.C. 2302. A personnel action is a specific list of enumerated actions or what would fall into a catch-all, any other significant changes in duties, responsibilities, or working conditions. We don't have that in this case. For example, Ms. McCray complains about being yelled at. That's not a personnel action. Countermanding instructions given by a subordinate is not a personnel action. Holding a coaching session with a mentor is not a personnel action. What about the question of inadequate training? Yes, John, that's one good point that we're going to get to. So under the statute, Section 5 U.S.C. 2302, there's a specific enumerated action for training, for a decision concerning training, if that decision might reasonably lead to another listed personnel action. It's important here to pause for a moment to take stock of what exactly is the decision at issue in this case. Ms. McCray, when she initially initiated this lawsuit, alleged that she was denied nurse manager training, but she did have to admit during her deposition that she actually was provided that training. And so the allegation shifted. Now she claims that the training was inadequate. And how was it inadequate? Ms. McCray alleges that she was given training by Ms. Duda where it was a session where she showed her how to do the certain actions, the particular actions. Essentially what she says is pointed and clicked and said, this is how you do it. From the government's perspective, that's not the type of decision regarding concerning training that might lead to a personnel action. A decision regarding the length or the specific content of the training is not that type of decision. That sounds to me like a fact question, not a legal question. And it should not be resolved in summary judgment. Your Honor, I don't think it's a fact question because the facts were uncontroverted. No one disagreed about how the training went down. So I don't think it's a fact question for a jury to decide. The court can decide in the first instance whether or not that particular action qualifies as a personnel action. It's a legal question from the government's perspective. And counsel, what is the applicable law that we should look to to determine what constitutes a personnel action for the federal sector provision? If I'm understanding the question correctly, from the government's perspective, the applicable law to determine whether or not there's been a personnel action is 5 U.S.C. 2302, which defines personnel action. But I will say, Your Honor, if the court proceeds to the catch-all, significant change in duties, responsibilities, or other working conditions, the court can fall back to its prior precedent because, of course, this court has for many years considered whether or not an adverse employment action had occurred as the question was whether or not that was a significant change in the working conditions. And so the court can fall back to that prior precedent to determine whether or not there's been a personnel action under the catch-all. Would that require more factual investigation? I mean, whether something falls under the catch-all? I don't think so, especially in this case, Your Honor, because the facts really were uncontroverted. The government and its motion for summary judgment primarily relied on Ms. McRae's own testimony to support its motion for summary judgment. And I will note, and I think this problem occurred both at summary judgment, I think in the briefing here, all of the facts that are presented to this court in Ms. McRae's appellate brief come from the pretrial order. I won't say all, the majority of them. And I think that's pretty telling because what the court doesn't have in those allegations in the pretrial order is citations to the record to support that fact. And that was also an issue at summary judgment where the fact would say one thing and the citation, you look in the record, it says something different. And so part of the issue, I think, with Ms. McRae's response in summary judgment and why the court concluded, the district court concluded what it did is that many of the facts presented by Ms. McRae simply did not have support in the record. And of course, under Rule 56 and the summary judgment standard, when those facts don't have support, the court doesn't have to credit them. I want to shift gears. Can I ask, I'm just trying to understand what's before us on appeal. You heard me ask Ms. Randles about the hostile work environment and constructive discharge claims. And she conceded constructive discharge has not been appealed. But she said that the hostile work environment, the second claim, was properly appealed. And that was a, you know, that claim, as I understand it, was resolved on the pleadings. I read your response brief to disagree with that. And in fact, it's just by a footnote. In other words, you kind of see it as a gimme that she's not arguing. And that seems to matter here to me because the hostile work environment has a separate doctrine of continuing violations. But what's your view of that? Yes, Judge Federico, that's absolutely correct. We don't believe that the hostile work environment claim has been appealed at all. If at most, Ms. McCrae's brief has a sentence, one single sentence saying the hostile work environment claim shouldn't have been dismissed, and that's obviously not enough to put that issue before this court. One other thing I do want to mention on that note is Ms. McCrae's claim that she has a retaliatory harassment claim. We believe that that claim's also been waived. The magistrate judge ruled that she had not brought that claim in her district court complaint. She did not appeal that decision by the magistrate judge. And as the district court noted, and the district court noted that in its order, that the issue wasn't before the district court to resolve because there had been no appeal. And so under the firm waiver doctrine, we believe that that issue has been waived and it's not before this court. And so the only two issues before this court today are Ms. McCrae's discrimination claim and her retaliation claim. Mr. Van Der Spee, I didn't understand exactly your point on the pretrial order. Are you saying that in the pretrial order, there are, there's no citation in the record, but there are assertions by Ms. McCrae in there that have no basis in the actual record. They're just in the pretrial order. Is that correct understanding what you're saying? So, Your Honor, it's, what I would say is the pretrial order is not the summary judgment record. And so those facts were not before the district court. So those are not things the court considered. But what I think it's telling is that the pretrial order is just allegations. It doesn't require any support in the record. But it doesn't matter anyway because you're telling me the pretrial order is not in the record. No, no, no. I'm sorry, Your Honor. I'm sorry if I was less than clear. The pretrial order is in the record. What I'm saying is that the pretrial order is not the summary judgment record because rule 56 requires, right, citations to the record to support the allegations. And that is the portion of the pretrial order that counsel is referring to in citing it as evidence. Does it come under a title, under a subtitle in the pretrial order of claims and assertions? Or is it in the undisputed facts? Or where is it? So it's in the allegation portion. The pretrial order doesn't include undisputed facts. It's just to frame the case before the court. But it's clear that they're, it's clear they're denominated allegations and claims. Yes, yes. Okay. All right. That's all I want. Thank you. Yeah. But those allegations are functionally different than what is presented to the court on summary judgment where we have to have citations to depositions, affidavits, declarations, those types of things. I only have 22 seconds left. I just want to mention my second and third points that the uncontroverted facts do not support an inference discrimination based on race. And that goes to the questions that you were asking my friend on the other side, Judge Murphy. There's nothing in the record to really support that there is any racial animus on the part of Ms. Duda. Well, other than her testimony, right? Other than Ms. McRae's unsupported speculation that racial animus must have been the reason for the actions Ms. Duda took. And this court has said many times that that type of evidence is not enough. It's not sufficient to overcome summary judgment. What we need to see is more specific facts, some evidence of discrimination and the actions that Ms. Duda took. And that's just not in this case. Is it your position that these statements in the deposition are generalities and there is no examples of when there was disparate treatment? Is that fair? Is that what you're saying? That's fair. And it's important to note that the statements that Ms. McRae relies on from her deposition were actually questions I asked her to read her complaint, say, this is your allegation and your complaint. Tell me about that. And so it's important to note that as well. But specifically, there's no specific examples from Ms. McRae in her deposition testimony. Of course, she had a full discovery period to obtain any evidence that she thought she needed to support her case. She did not present that in summary judgment. And just finally, my last point, Ms. McRae has not presented any evidence from which a reasonable jury could infer that Ms. Duda had knowledge of Ms. McRae's protected activity. And with that, I'd ask that the court follow the record, not the rhetoric and affirm the district court's opinion. Thank you. Thank you, counsel. Thank you both for your helpful arguments. Case will be submitted. And I think that concludes our four cases for argument this morning. Court will be in recess until tomorrow morning at nine and counsel are dismissed. Thank you.